UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
GREGORY VINING,                                             :
                                      Plaintiff,            :
                                                            :           12 Civ. 3267 (JPO)
                  -against-                                 :
                                                            :           MEMORANDUM AND
DEPARTMENT OF CORRECTION, et al.,                           :                ORDER
                                      Defendants.           :
                                                            :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      This is a civil rights case brought by Plaintiff Gregory Vining against Defendants the City of New York, Dr. Mohammed Yazdonie, Police Officers Rosado and Mason, and a physician who works as a hand specialist in the West Facility at Riker's Island ("the Specialist") (collectively "Defendants").  Plaintiff alleges that Defendants violated the Eighth Amendment through their deliberate indifference to his need for medical treatment.  Defendants have moved to dismiss the Complaint.  For the reasons that follow, Defendants' motion is granted.

**I.     Standard of Review**

      On a motion to dismiss a complaint pursuant to Rule 12(b)(6), the Court accepts the complaint's factual allegations as true and draws inferences only in the plaintiff's favor.  *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "*Pro se* status does not . . . excuse a plaintiff from compliance with the

pleading standards of the Federal Rules of Civil Procedure," *Jenkins v. New York City Dept. of Educ.*, No. 10 Civ. 6159, 2011 WL 5451711, at *3 (S.D.N.Y. Nov. 9, 2011) *aff'd*, 11-5306, 2013 WL 309982 (2d Cir. Jan. 28, 2013), though *pro se* complaints are read liberally and interpreted as raising the strongest arguments they suggest, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**II.     Background**

Plaintiff was arrested two days after a fist fight and, at the time of his arrest, told Officers Rosado and Mason that he thought his hand was broken—specifically, his "right two knuckles." In his opposition filing, Plaintiff explains that he had not gone to the hospital right away because he wanted to wait a few days post-injury to see if the swelling would go down. The arresting officers refused to take him to the hospital because that would cause a delay in seeing a judge. When Plaintiff arrived at Riker's Island on November 11, 2011, he was seen by Yazdonie. He said to Yazdonie "I think I broke my hand." Yazdonie told Plaintiff that he would be sent to the West Facility for x-rays. That did not occur for two weeks, at which point Plaintiff was informed that his right hand was broken in two places and promised a cast. He never received that cast. When Plaintiff was seen in the medical facility one month later, he was told by the Specialist that it was too late for a cast and that his hand had already healed. Plaintiff told the Specialist that his hand still hurt, so the Specialist sent him to Bellevue Hospital, where he was told that it was too late for a cast or any further treatment of that sort. Plaintiff's hand still hurts: "I can't make a tight fist or I can't straighten my hand out all the way [and] it's going [to affect me] for the rest of my life." Plaintiff notes in his opposition filing that someone at Bellevue "told [him he] should have been brought to the hospital a long time ago."

**III.     Discussion**

    **A.     Denial of Medical Treatment**

Plaintiff does not indicate whether he is an inmate or pre-trial detainee.  If he is an inmate, his denial of treatment claim is based on the Eighth Amendment; if he is a pre-trial detainee, it is based on the Fourteenth Amendment.  *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).  That distinction does not matter here, however, because "[c]laims for deliberate indifference to a . . . serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).  This standard originated in Eighth Amendment doctrine.

The Eighth Amendment to the U.S. Constitution commands that "cruel and unusual punishments [shall not be] inflicted."  U.S. Const. amend. VIII.  This rule, applicable to the states through the Fourteenth Amendment, *see Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976), is violated by unnecessary and wanton inflictions of pain and suffering, *see Whitley v. Albers*, 475 U.S. 312, 320 (1986).  Plaintiff alleges an Eighth Amendment violation due to the quality of his medical treatment.  In 1976, the Supreme Court explained that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (quotation marks and internal citations omitted).

To state an Eighth Amendment claim, a prisoner must allege both (1) that he suffered a sufficiently, objectively serious deprivation and (2) that officials who caused the harm acted or

failed to act with a sufficiently culpable state of mind, *i.e.*, with deliberate indifference to inmate health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective prong of this analysis requires an assessment of the allegedly cruel and unusual conditions.  Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), prisoners may not be deprived of "basic human needs— *e.g.*, food, clothing, shelter, medical care, and reasonable safety," *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *Estelle*, 429 U.S. at 103-104).  "Nor may prison officials expose prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future health.'"  *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Helling*, 509 U.S. at 35).  "Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency."  *Id.* (citations omitted); *see also Carr v. Canty*, No. 10 Civ. 3829, 2012 WL 3578742, at *3 (S.D.N.Y. Aug. 16, 2012) ("[T]o establish the deprivation of a basic human need such as reasonable safety, an inmate must show actual or imminent harm." (quotation marks and citations omitted)).

"To establish the second element, deliberate indifference, a plaintiff must show something more than mere negligence . . . ."  *Id.* (internal quotation marks and citation omitted). Therefore, an official cannot be found liable for an Eighth Amendment violation "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  The Second Circuit has noted that "[t]his deliberate indifference element is equivalent to the familiar standard of recklessness as used in criminal law."  *Phelps*, 308 F.3d at 186 (quotation marks omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact

subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Although this standard does not change, "the presence of a medical treatment issue calls upon the Court to assess with particularity the nature and quality of the medical deprivation that Plaintiff endured." *Walker v. Schriro*, No. 11 Civ. 9299, 2013 WL 1234930, at *13 (S.D.N.Y. Mar. 26, 2013); *see also Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) ("Because [t]he objective component of an Eighth Amendment claim is . . . [necessarily] contextual and fact-specific, the serious medical need inquiry must be tailored to the specific circumstances of each case." (citations omitted)). As the Second Circuit has explained,

> if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain.

*Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (interal quotation marks and citations omitted) (alteration in the original). While this standard most certainly includes "condition[s] of urgency that may produce death, degeneration, or extreme pain," *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quotation marks and citation omitted), it has also been interpreted to include "less serious denials [of medical attention] which cause or perpetuate pain," *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (citation omitted). Courts "will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain." *Id.* Accordingly, when presented with denial of

medical treatment claims, courts do not "require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do [they] require a showing that his or her condition will degenerate into a life-threatening one." *See id.* (disagreeing with district court determination that chronic pain somewhere between 'annoying' and 'extreme' could not suffice to support a denial of treatment violation under the Eighth Amendment).

Of course, it is well established that not every claim made by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment; neither negligence nor medical malpractice is sufficient. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). To the contrary, a plaintiff must show conduct that is "repugnant to the conscience" or "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102, 105 (citations omitted).[1]

Defendants' first argument is that Plaintiff fails to allege an objectively serious, sufficient deprivation of his constitutional rights. In support of this position, Defendants rely exclusively on a string of cases addressing lacerated or broken fingers. *See, e.g.*, *Sonds v. St. Barnabas Hosp. Corr. Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) ("A bleeding finger does not pose a substantial risk of serious harm. Case law holds that the objective prong of the deliberate indifference test is not satisfied even where a finger is broken."); *Henderson v. Doe*, No. 98 Civ. 5011, 1999 WL 378333, at *1 (S.D.N.Y. June 10, 1999) (rejecting Eighth Amendment claim based on injury to "[a] pinky finger suffered while plaintiff was playing basketball with other inmates on Riker's Island"); *Rivera v. Johnson*, No. 95 Civ. 845, 1996 WL

---

[1] Moreover, inmates are not entitled to the medical treatment of their choice. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." (citation omitted)); *see also Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).

549336, at *2 (W.D.N.Y. Sept. 20, 1996) ("A broken finger, without more, simply does not present a condition of urgency of the type that . . . merits constitutional protection."). These cases are inapposite, notwithstanding Defendants' assertion that they are relevant because "[t]he knuckle is where the metacarpal bone of the hand meets the phalanges bone of the finger."

Indeed, numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones. *See, e.g.*, *Lepper v. Nguyen*, 368 F. App'x 35, 39 (11th Cir. 2010); *Andrews v. Hanks*, 50 Fed. Appx. 766, 769 (7th Cir. 2002); *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998); *Beaman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011); *Thompson v. Shutt*, No. 09 Civ. 1585, 2010 WL 4366107, at *4 (E.D. Cal. Oct. 27, 2010); *Mantigal v. Cate*, 10 Civ. 1503, 2010 WL 3365735, at *6 (C.D. Cal. May 24, 2010) *report and recommendation adopted*, 10 Civ. 1503, 2010 WL 3365383 (C.D. Cal. Aug. 24, 2010); *Johnson v. Adams*, No. 9 Civ. 2, 2010 WL 1407787, at *4 (E.D. Ark. Mar. 8, 2010) *report and recommendation adopted*, No. 9 Civ. 2, 2010 WL 1407790 (E.D. Ark. Mar. 31, 2010); *Bragg v. Tyler*, No. 7 Civ. 4194, 2007 WL 2915098, at *5 (D.N.J. Oct. 4, 2007).

This makes sense. The factors that determine whether a prisoner's medical condition is serious include: "1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, 2) whether the medical condition significantly affects daily activities, and 3) the existence of chronic and substantial pain." *Brock*, 315 F.3d at 162-63. Here, at least two physicians deemed Plaintiff's injury worthy of comment and treatment, any patient would presumably view a broken hand as a serious condition, a permanent impairment in the use of one's right hand has the potential to significantly affect daily activities, and Plaintiff reports an experience of chronic pain. In his opposition filing, Plaintiff explains how the injury continues to affect him:

> An old timer told me a long time ago the worst thing you can do is get a toothache in jail because you will be in pain for weeks before they get you to the dentist.  I don't only feel, but I know for a fact that any broken bone is urgent because now I can't make a fist, I can't straighten my hand out all the way, I can't even grip stuff like I used to.  Sometimes when I sleep on my hand by accident, I wake up in pain, sometimes when it rains by hand starts aching.

While the medical details will vary from case to case, and bright line rules are few and far between in the Eighth Amendment context, the Court concludes that Plaintiff's broken hand satisfies the requirement of an objectively serious injury.  Just as this Court has explained that "[m]obility is fundamental to our continued health," *Giambalvo v. Sommer*, 10 Civ. 6774, 2012 WL 4471532, at *5 (S.D.N.Y. Sept. 19, 2012), and cautioned that "the Eighth Amendment [does not] abide[] the wanton infliction of months of 'extreme' pain through the allegedly arbitrary denial of medically authorized footwear by prison guards," *Walker*, 2013 WL 1234930, at *14, so too does the Court recognize that use of one's hand is essential to effective functioning in the world and that chronic pain arising from inadequate medical treatment of a severe hand injury may qualify as objectively serious.  After all, it is hard to imagine that any court would knowingly impose a "sentence that required the inmate to submit to such pain." *Brock*, 315 F.3d at 163.  In short, a broken hand is not the same as a broken finger.  Application of settled Second Circuit doctrine points toward the conclusion that chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis.

Defendants nonetheless prevail, however, because of their second argument, which assails the adequacy of Plaintiff's allegations regarding subjective intent.  The critical issue is whether any of the defendants in this case acted recklessly—in other words, whether any of them knew of and nonetheless disregarded an excessive risk to Plaintiff's health.

Plaintiff alleges that Officers Rosado and Mason knew of his hand injury, but nonetheless took him to court rather than a hospital.  His claims against them cannot succeed because these officers, presented with Plaintiff's claim of a broken hand, would not have been expected to view this injury as of a sort that required immediate medical attention.  When a plaintiff alleges deliberate indifference to the need for medical treatment, the critical question with respect to an arresting officer's subjective intent is whether the injury would have appeared "urgent" to the officer and, if so, whether the officer either denied medical care entirely or "deliberately ignored that need [for medical care] for an unreasonable period of time."  *Morgan v. County of Nassau*, 720 F. Supp. 2d 229, 239 (E.D.N.Y. 2010).  Because Plaintiff's injury would not have appeared urgent, unlike cases where a plaintiff was discovered unconscious on the ground, *see, e.g.*, *id.*, or where a plaintiff was known to have ingested a dangerous amount of alcohol or drugs, *see, e.g.*, *Bradway v. Town of Southampton*, 826 F. Supp. 2d 458, 471 (E.D.N.Y. 2011), the officers did not act recklessly in refusing to seek immediate medical care.

Plaintiff does not allege any culpable mental state, such as recklessness or malice, on the part of Yazdonie or the Specialist.  Nor does Plaintiff allege that Yazdonie or the Specialist either intended or engineered the multi-week delays that prevented timely and proper care for his injury.  The Complaint and Plaintiff's opposition filing suggest that the Specialist had limited availability, and that timely and effective care for Plaintiff's injury fell victim to the impersonal dynamic of prison medical logistics.  Thus, unlike most denial of treatment cases, this dispute is not based on a "difference of opinion between a prisoner and prison officials regarding medical treatment" or an effort by Plaintiff to "second guess medical judgments."  *Sonds v. St. Barnabas Hosp. Corr. Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).  Nor do Plaintiff and Defendants appear to disagree over "the need for specialists or the timing of their intervention."

*Id.* at 312.  Rather, Plaintiff's claim flows from scheduling errors and ultimately inadequate advocacy by Yazdonie on behalf of his client's medical needs.  That state of affairs is unfortunate, but absent a showing of recklessness on the part of a particular actor, Plaintiff's claim cannot succeed.  At most, Plaintiff's allegations indicate that Yazdonie and the Specialist were *negligent* in failing to schedule prompt follow-ups.  *See Hernandez v. Keane*, 341 F.3d 137, 145-46 (2d Cir. 2003) ("The evidence as to the treatment of plaintiff's hand suggests at most several acts of negligence over a prolonged period."); *Beaman*, 838 F. Supp. 2d at 110 ("The most that [the plaintiff's] allegations show, however, is that the two nurses and Dr. Shiekh misdiagnosed his injuries, and failed to recognize the severity of those injuries.  Such allegations might conceivably show malpractice, but they do not state an Eighth Amendment claim." (citations omitted)).  Negligence, however, "is not enough to support an Eighth Amendment violation."  *Hernandez*, 341 F.3d at 146.  Accordingly, Plaintiff's claims against Yazdonie and the Specialist must be dismissed.

      **B.**     **Claims Against Defendant New York City**

To establish a § 1983 claim against a municipality, a plaintiff must show that the officials who deprived him of a constitutional right acted pursuant to an official municipal policy or custom.  *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978); *see Reynolds v. Guliani*, 506 F.3d 183, 190-91 (2d Cir. 2007).  Here, Plaintiff has failed to allege that any prison official acted pursuant to a municipal policy or custom.  Plaintiff has also failed to allege any facts from which a court could reasonably infer that a relevant policy or custom existed, and that it contributed to Plaintiff's injuries.  Instead, Plaintiff has alleged only isolated episodes of deliberate indifference to his need for medical treatment by his arresting officers and by medical providers at Riker's Island.  Thus, Plaintiff's municipal liability claim must be dismissed.

## IV.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at Dkt. No. 12 and to close this case.

SO ORDERED.

Dated: New York, New York
       April 5, 2012

_____
J. PAUL OETKEN
United States District Judge